IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| STEPHON M. BENNETT | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| C/O WASHINGTON, et al. | : | NO. 11-176 |

**MEMORANDUM**

**Padova, J.**                                                                           **January 9, 2013**

Pro se Plaintiff Stephon M. Bennett brings this action alleging violations of his civil rights arising out of a prison assault and subsequent medical care, pursuant to 42 U.S.C. § 1983. Presently before the Court are: (1) a Motion to Dismiss filed by Defendants Prison Health Services, Inc. ("PHS") and Health Care Administrator Kim Daniels; and (2) a Motion to Dismiss filed by Defendants the City of Philadelphia ("the City"), Sergeant Malachi White, and Lieutenant Elizabeth Henry. For the reasons that follow, we grant the Motion filed by PHS and Daniels. We also grant the Motion filed by the City, White, and Henry insofar as it seeks dismissal of the claims against the City, but deny that Motion insofar as it seeks dismissal of the claims against White and Henry.

**I.    BACKGROUND**

The Amended Complaint alleges the following facts. Due to a history of violent assaults and stabbings occurring inside unlocked prison cells at Curran Fromhold Corrections Facility ("CFCF"), CFCF maintains policies that require cell doors to be locked at all times, and require officers to conduct tours of the housing areas. (Am. Compl. ¶¶ 17, 19.) Cells are only to be opened by officers every thirty minutes, and are to remain open only in the presence of an

officer. (Id. ¶ 17.) On November 19, 2009, Plaintiff, a pre-trial detainee at CFCF,[1] was left in an unlocked cell with no officer at or near his door. (Id. ¶¶ 15, 18.) At 4:30 p.m., at least five other inmates entered Plaintiff's unlocked cell and viciously attacked him. (Id. ¶ 15.) Plaintiff suffered six stab wounds, as well as multiple abrasions to his head and face. (Id. ¶ 16.) After the attack, Plaintiff was left unattended inside his cell for close to two hours. (Id. ¶¶ 16, 19.)

At approximately 7:20 p.m., Plaintiff was escorted to CFCF's medical department where a PHS nurse tended to his wounds. (Id. ¶¶ 43-44.) At the time, PHS nurses were supervised and trained by Kim Daniels, who was employed by PHS as the Health Care Administrator at CFCF. (Id. ¶¶ 11, 50.) At some point after Plaintiff was taken to CFCF's medical department, CFCF corrections officers arrived and questioned Plaintiff about the stabbing, but he was unable to identify his attackers. (Id. ¶¶ 26, 31.) Two corrections officers told Plaintiff that he would spend time in the infirmary and protective custody rather than being sent to the hospital if he could not provide helpful information about his attackers' identities. (Id. ¶¶ 25-27, 34.) Lieutenant Elizabeth Henry, a supervisor of at least one of the officers involved, concurred in their threats. (Id. ¶¶ 29, 31.)

Three hours after arriving at the medical department, Plaintiff was transferred to the infirmary at a sister jail, where he complained to nurses of excruciating pain and shortness of breath, but was forced to sleep on his back, further aggravating his stab wounds. (Id. ¶¶ 44-45.) Plaintiff did not see a doctor until 9:30 a.m. the following morning, at which time he complained of difficulty breathing, dizziness, and excessive back pain. (Id. ¶¶ 46-47.) The prison doctor

---

[1]The Amended Complaint does not specifically allege that Plaintiff was a pre-trial detainee. In his memorandum, however, Plaintiff states that on November 19, 2009, he was a pre-trial detainee at CFCF. (Pl.'s Mem. in Response to PHS's and Daniels' Motion at 2.)

sent Plaintiff for chest x-rays, which showed that he was suffering from a collapsed or collapsing lung.  (Id. ¶ 47.)  Plaintiff was transported from the infirmary to a hospital at around 5:45 p.m. on November 20, 2009.  (Id.)

The Amended Complaint asserts claims for "failure to protect," "cruel and unusual punishment," and "due process violations" under the Eighth and Fourteenth Amendments (id. ¶ 65) against: (1) PHS; (2) Kim Daniels; (3) the City; (4) Sergeant Malachi White, the supervisor of the officers on duty on November 19, 2009; and (5) Lieutenant Elizabeth Henry.

## II.  LEGAL STANDARD

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court takes the factual allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)); see Mayer v. Belichick, 605 F.3d 223, 229 (3d Cir. 2010).  Legal conclusions, however, receive no deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests."  Twombly, 550 U.S. at 555 (quotation omitted) (alteration in original).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). In the end, we will dismiss a complaint if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1216, at 235 36 (3d ed. 2004)).

## III. DISCUSSION

Plaintiff has brought his claims pursuant to 42 U.S.C. § 1983, which provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. In order to state a claim for relief pursuant to § 1983, "a plaintiff must demonstrate the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citations omitted).

### A. PHS and the City

The Amended Complaint alleges that PHS and the City violated Plaintiff's constitutional rights by failing to enact or follow policies to protect inmates at CFCF. It is well settled that a municipality may only be liable under § 1983 when the alleged constitutional transgressor implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 694 (1978). "The same standard applies to a private corporation . . . that is acting under color of state

4

law." Thomas v. Zinkel, 155 F. Supp. 2d 408, 412 (E.D. Pa. 2001) (citation omitted); see also Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003) (recognizing that "[i]n order for PHS to be liable, [a plaintiff] must provide evidence that there was a relevant PHS policy or custom" (citation omitted)). A policy is defined as a "'statement, ordinance, regulation, or decision officially adopted and promulgated by [an entity's] officers.'" Simmons v. City of Philadelphia, 947 F.2d 1042, 1059 (3d Cir. 1991) (quoting Monell, 436 U.S. at 690). A custom consists of "'such practices of state officials . . . [as are] so permanent and well settled as to constitute a custom or usage with the force of law.'" Id. (quoting Monell, 436 U.S. at 691) (alteration in original).

Once a policy or custom is identified, a plaintiff must establish that the municipality or private entity maintained the policy or custom with "deliberate indifference" to the constitutional deprivations that the policy or custom caused. City of Canton v. Harris, 489 U.S. 378, 389 (1989). Deliberate indifference may be established by evidence that policymakers were aware of the constitutional deprivations and of the alternatives for preventing them, "but either deliberately chose not to pursue these alternatives or acquiesced in a longstanding policy or custom of inaction in this regard." Simmons, 947 F.2d at 1064; see also Bd. of County Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 407 (1997) ("If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action - the 'deliberate indifference' - necessary to trigger municipal liability." (citing City of Canton, 489 U.S. at 390 n.10)). In addition, a plaintiff must also prove

that the policy or custom was "the proximate cause of the injuries suffered." Beck v. City of Pittsburgh, 89 F.3d 966, 972 n.6 (3d Cir. 1996) (citation omitted).

1. PHS

The Amended Complaint alleges that PHS violated Plaintiff's constitutional rights by allowing twenty-five hours to elapse between his stabbing and his transfer to a hospital, staffing inadequately trained nurses, failing to have a doctor on duty, failing to have a doctor treat him, and allowing a corrections officer to determine that he would be sent to the infirmary instead of a hospital.[2] (Am. Compl. ¶¶ 48-53.) Plaintiff argues that PHS maintained a policy of providing inadequate medical care, and failed to enact a policy prohibiting corrections officers from interrogating injured inmates. (Pl.'s Mem. in Resp. to PHS's and Daniels' Motion at 9.)

PHS argues that we should dismiss Plaintiff's claim against it because the Amended Complaint merely alleges that PHS is vicariously liable for the actions of its employees. To state a claim under § 1983 against a private entity, a Complaint may not merely allege that the entity is liable because its employees violated the plaintiff's constitutional rights. See Monell, 436 U.S. at 694. In other words, a private entity's liability under § 1983 may not be based on vicarious liability or respondeat superior.[3] See Natale, 318 F.3d at 583 (citing Monell, 436 U.S. at 691). The Amended Complaint alleges that "Plaintiff's injuries . . . were the direct result of illegal

---

[2]The Amended Complaint's allegations against PHS are based on PHS's failure to provide Plaintiff with adequate medical care. A pre-trial detainee's claim of inadequate medical care arises under the due process clause of the Fourteenth Amendment, though the standard for such claims is the same as that for a claim of inadequate medical care under the Eighth Amendment set forth in Estelle v. Gamble, 429 U.S. 97, 103-05 (1976). Natale, 318 F.3d at 581.

[3]"Respondeat superior and vicarious liability are the theories under which courts 'impose liability vicariously . . . solely on the basis of the existence of an employer-employee relationship with a tortfeasor.'" Natale, 318 F.3d at 583 n.9 (quoting Monell, 436 U.S. at 692).

actions taken pursuant to an official policy, custom, and practice [of PHS.]" (Id. ¶ 53.) Therefore, the Amended Complaint does not merely allege that PHS is liable under § 1983 based on the actions of its employees, but rather alleges that PHS itself employed an unconstitutional policy or custom that violated Plaintiff's constitutional right to adequate medical care. Therefore, we conclude that PHS's argument as to vicarious liability lacks merit.

PHS also argues that the Amended Complaint fails to allege a plausible claim that PHS employed a policy or custom of: (1) inadequately staffing medical personnel at night, (2) failing to enact a policy prohibiting corrections officers from interrogating injured inmates, or (3) allowing corrections officers to make medical treatment decisions for injured inmates. PHS further argues that the Amended Complaint does not allege that PHS maintained these policies with deliberate indifference to the constitutional violations that these policies allegedly caused.

The Amended Complaint alleges that, on November 19, 2009, PHS did not have a doctor on duty or failed to have a doctor treat Plaintiff (Am. Compl. ¶ 48), and Plaintiff was treated only by nurses from 7:20 p.m. until 9:30 a.m. the following morning, at which time he was seen by a doctor (id. ¶¶ 43-46). According to the Amended Complaint, PHS employees are "notorious for taking short cuts, ignoring widespread health and safety concerns, and being aware of a serious risk of harm and failing to respond reasonably." (Id. ¶ 51.) The Amended Complaint also alleges that corrections officers spoke to Plaintiff repeatedly after he was stabbed, and those officers threatened that Plaintiff would not be sent to the hospital if he could not identify his attackers. (Id. ¶¶ 26-27.) The Amended Complaint further alleges that a prison official told Plaintiff that he would be sent to the prison infirmary rather than the hospital. (Id. ¶¶ 27, 33-34.)

7

With respect to each of these allegations, the Amended Complaint merely alleges that, specifically on the night of November 19, 2009, there was no doctor on duty at CFCF, a corrections officer interrogated Plaintiff, and a corrections officer threatened that Plaintiff would not be taken to a hospital for treatment. (See id. ¶¶ 43-46, 51, 26-27, 33-34.) These are simply allegations of a single incident of alleged constitutional violations that took place on November 19, 2009. There are no facts in the Amended Complaint that indicate that PHS employed a policy or custom of understaffing medical personnel, or of allowing corrections officers to interrogate or make medical treatment decisions for injured prisoners. In paragraph 53, the Amended Complaint alleges that PHS employed "an official policy, custom, and practice" that caused Plaintiff's injuries (see id. ¶ 53), but this bare allegation is insufficient to state a claim for a policy or practice that would support a finding of a private entity's liability under § 1983. See Phillips, 515 F.3d at 231 (noting that "[a] formulaic recitation of the elements of a cause of action" cannot survive a Rule 12(b)(6) motion (citing Twombly, 550 U.S. at 555)).[4]

---

[4]Plaintiff also notes in his Memorandum that "since arguing caselaw in [the] face of [a] complaint is prohibited, plaintiff now rel[ies] on" Morton v. City of Phila., Civ. A. No. 09-4877, 2011 WL 536545 (E.D. Pa. Feb. 15, 2011), and Burgos v. Phila. Prison Sys., 760 F. Supp. 2d 502 (E.D. Pa. 2011), to establish that PHS's policy of providing inadequate medical treatment "is a well settled norm." (Pl.'s Mem. in Resp. to PHS's and Daniels' Motion at 8.) First, the Amended Complaint does not in any way assert collateral estoppel, and this argument appears only in Plaintiff's Memorandum. Second, collateral estoppel requires that, among other things, "the identical issue was previously adjudicated." Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc., 458 F.3d 244, 249 (3d Cir. 2006) (quotation and citations omitted). Neither Morton nor Burgos involved an issue "identical" to the Amended Complaint's allegations, and, moreover, the courts in Morton and Burgos found only that there were genuine issues of material fact as to the existence of a PHS policy. Morton, 2011 WL 536545, at *7; Burgos, 760 F. Supp. 2d at 509-11. Thus, there were no "adjudications" of the issues for the purposes of collateral estoppel. See Pennsylvania v. Holder, 805 A.2d 499, 502-03 (Pa. 2002) (citation omitted). Accordingly, Plaintiff may not assert collateral estoppel to establish a relevant PHS policy.

In addition, the Amended Complaint is wholly devoid of factual allegations that would show that PHS's alleged understaffing of medical personnel, or its failure to prohibit corrections officers from interrogating or making medical treatment decisions for injured inmates, caused injuries to other inmates in the past. Natale, 318 F.3d at 582 (noting that the standard of deliberate indifference requires that PHS "'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety'" (quoting Farmer, 511 U.S. at 837)). The Amended Complaint does allege that PHS employees are "notorious for taking short cuts [and] ignoring widespread health and safety concerns" (Am. Compl. ¶ 51), but it does not allege that these "notorious" employees ever caused other constitutional violations, or that PHS was aware of any such previous transgressions. In other words, the Amended Complaint contains no factual allegations of prior constitutional deprivations that would put PHS "on notice" that new policies were appropriate, Bd. of County Comm'rs, 520 U.S. at 407, or that PHS "deliberately choose not to pursue these alternatives or acquiesced in a long-standing policy or custom of inaction," Simmons, 947 F.2d at 1064 (footnote omitted).

Because the Amended Complaint fails to allege a specific policy that caused the alleged constitutional violation, and further fails to adequately allege that PHS's actions constituted deliberate indifference, we conclude that the Amended Complaint fails to state a plausible claim against PHS under § 1983, and accordingly, we grant PHS's Motion as to Plaintiff's claims against PHS.

2. The City

The City argues that the Amended Complaint fails to state a claim against it because it does not establish with sufficient specificity a City policy which caused any alleged

9

constitutional violations. The Amended Complaint alleges that "a policy" was established at CFCF "to keep cell doors locked at all times," that "[c]ells were only to be opened by officers every thirty minutes or so with their key," and that "[d]oors were only to remain open in the presence of the officer." (Am. Compl. ¶ 17.) In addition, the Amended Complaint alleges that the City had a "policy of mandatory tours of the pod/housing area by officers." (Id. ¶ 19.) Therefore, the Amended Complaint alleges two City policies that were in place at CFCF.

However, the Amended Complaint does not allege that these polices <u>caused</u> the alleged constitutional violations. In other words, the Amended Complaint does not allege that the City's policies caused inmates to enter Plaintiff's cell and attack him. Rather, the Amended Complaint alleges that these policies were in place to prevent the very circumstances that Plaintiff encountered. (<u>See</u> <u>id.</u> ¶ 17.) There are no factual allegations in the Complaint that show that the City's policies were "the proximate cause of the injuries suffered." <u>Beck</u>, 89 F.3d at 972 n.6; <u>see also</u> <u>Bielevicz v. Dubinon</u>, 915 F.2d 845, 851 (3d Cir. 1990) (explaining that a causal link is established where "occurrence of the specific violation was made reasonably probable by permitted continuation of the custom") (quotation omitted)). Therefore, the Amended Complaint does not allege a plausible claim against the City under § 1983, and accordingly, we grant the City's Motion as to Plaintiff's claims against the City.

B.  <u>Healthcare Administrator Kim Daniels</u>

The Amended Complaint alleges that Kim Daniels violated Plaintiff's constitutional rights under § 1983 by failing to supervise and train her employees to provide adequate medical care. (Am. Compl. ¶ 50.) "Under § 1983, a supervisor may be liable for her failure to train or supervise her employees." <u>Whitfield v. City of Phila.</u>, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008).

10

To state a claim under § 1983 for failure to train, a complaint must allege that the supervisor's failure to train her employees amounts to "'deliberate indifference to the rights of persons with whom the [untrained employees] c[a]me into contact.'" Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989) (first alteration in original)).

The Supreme Court has explained that in a failure to train claim, deliberate indifference requires proof that the supervisor "disregarded a known or obvious consequence" of her action. Id. at 1360 (quotation omitted). When a supervisor is on "actual or constructive notice that a particular omission in [her] training program" causes her subordinates to "violate citizens' constitutional rights," the supervisor may be deliberately indifferent if she chooses to retain her training program. Id. (citing Bryan Cnty., 520 U.S. at 407). In other words, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. (quoting Bryan Cnty., 520 U.S. at 409); see Washington v. City of Phila., Civ. A. No. 11-3275, 2012 WL 85480, at *6 (E.D. Pa. Jan. 11, 2012). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Connick, 131 S. Ct. at 1360.

However, "'[i]n a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference." Id. at 1361 (quoting Bryan Cnty., 520 U.S. at 409); Washington, 2012 WL 85480, at *8 ("To establish deliberate indifference from a single incident, a plaintiff must show that the municipality's failure to train was obviously going to lead to the constitutional violations alleged.") Such a circumstance occurs where a defendant is "on

11

notice that, absent additional specified training, it was 'highly predictable'" that failing to train would amount to "conscious disregard" of the plaintiff's rights. Connick, 131 S. Ct. at 1365; see Canton, 489 U.S. at 390 n.10 (hypothesizing that a city's failure to train armed officers in the use of deadly force to capture fleeing felons, even absent a pattern of similar violations, would establish deliberate indifference). In addition to proving deliberate indifference, a plaintiff must also demonstrate that the inadequate training caused a constitutional violation. See Grazier v. City of Phila., 328 F.3d 120, 124-25 (3d Cir. 2003).

Daniels argues that the Amended Complaint's allegation of failure to train is merely a veiled allegation of vicarious liability. However, the Amended Complaint clearly alleges that Daniels is responsible for "failing to supervise and adequately train her employees." (Id. ¶ 50.) Therefore, the Amended Complaint's claim against Daniels does not rest solely on her position as a supervisor, but rather alleges liability based on a failure to train, and thus Daniels's argument as to vicarious liability lacks merit.

Daniels also argues that the Amended Complaint fails to state a claim for failure to train because it identifies only one instance of delayed treatment—Plaintiff's case—and fails to allege a pattern of similar constitutional violations to sufficiently establish Daniels's awareness of a need to train nurses to recognize when a prisoner needed a doctor's evaluation.[5] The Amended Complaint alleges that Daniels "is directly responsible for failing to supervise and adequately train her employee[s] to the importance of adequate medical treatment." (Id.) However, the

---

[5]In addition, Daniels argues that she cannot be personally liable for any alleged constitutional violations because the Amended Complaint does not allege that she was present at the time of Plaintiff's treatment in the infirmary, nor does it allege that she directed the nurses to treat Plaintiff in any particular manner. Unlike Daniels, we do not read the Amended Complaint to allege that Daniels is liable for any affirmative acts she personally undertook with respect to Plaintiff's treatment on November 19, 2009.

Amended Complaint does not allege that there was a pattern of similar incidents involving inadequately trained nurses, which would be "ordinarily necessary" to state a claim under § 1983 based on failure to train. Connick, 131 S. Ct. at 1359 (citing Bryan Cnty., 520 U.S. at 409). The Amended Complaint merely alleges that on the night of November 19, 2009, Plaintiff was not seen by a doctor (Am. Compl. ¶ 48), and that generally PHS employees are "notorious for taking short cuts" and "ignoring widespread health and safety concerns" (id. ¶ 51). The Amended Complaint contains no allegations that Daniels had notice that her training was "deficient in a particular respect." Connick, 131 S. Ct. at 1360. Therefore, the Amended Complaint fails to allege a plausible claim that Daniels was deliberately indifferent to the need to train her nurses to recognize when an injured inmate needed a doctor's examination, based on a pattern of similar constitutional violations by untrained employees.

To survive Daniels's Motion absent allegations of a pattern of similar violations, Plaintiff's claim must fall into the "narrow range of circumstances" that would justify deliberate indifference based on a single incident. Id. at 1361 (citing Bryan Cnty., 520 U.S. at 409). The Amended Complaint alleges that CFCF maintained a medical department and staffed it full-time with nurses. (See Am. Compl. ¶¶ 43-44.) The Amended Complaint does not allege that these nurses were wholly untrained or unlicensed. It is not reasonable to infer from the sparse facts in the Amended Complaint that Daniels's need to more adequately train her nurses was "obviously" going to lead to a constitutional violation, Washington, 2012 WL 85480, at *8, or that it was "highly predictable" that failing to train would amount to "conscious disregard" for Plaintiff's rights, Connick, 131 S. Ct. at 1365; see also id. (declining to recognize single incident liability for a district attorney's office that failed to provide Brady training to its prosecutors). Therefore,

we conclude that the Amended Complaint fails to allege a plausible claim against Daniels for failure to train under § 1983, and accordingly, we grant Daniels's Motion as to Plaintiff's claim against Daniels.

### D. Sergeant White and Lieutenant Henry

The Amended Complaint alleges that Sergeant Malachi White and Lieutenant Elizabeth Henry violated Plaintiff's constitutional rights by failing to supervise their employees to ensure that the City's policy of keeping cell doors locked was followed. Under the Eighth Amendment, prison officials have a duty to protect inmates from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833 (1994). A pre-trial detainee's claim of failure to protect arises under the due process clause of the Fourteenth Amendment, though the standard for such a claim is substantially the same as that for failure to protect under the Eighth Amendment. See Urrutia v. Harrisburg Cnty. Police Dep't, 91 F.3d 451, 456 (3d Cir. 1996) (noting that an arrestee "is certainly entitled to the level of protection provided by the Eighth Amendment, and deliberate indifference on the part of prison officials to violent attacks by other inmates is prohibited by the Eighth Amendment") (citations omitted); A.M. v. Luzerne County Juvenile Det. Ctr., 372 F.3d 572, 587 n.4 (3d Cir. 2004) (recognizing that although "the contours of a state's due process obligations to detainees have not been defined . . . . detainees are entitled to no less protection than a convicted prisoner" (citations omitted)).

An individual with supervisory authority may be sued for failure to protect under two theories. Under the first theory, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused

[the] constitutional harm.'" A.M., 372 F.3d at 586 (second alteration in original) (quoting Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)).

Under the second theory, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. Id. (citing Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995)). "[A]ctual knowledge can be inferred from circumstances other than actual sight." Baker, 50 F.3d at 1194. As to acquiescence, "[w]here a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in . . . the subordinate's conduct." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1294 (3d Cir. 1997).

1. Sergeant Malachi White

White argues that the Amended Complaint merely alleges that he is vicariously liable for his subordinates' violations of Plaintiff's constitutional rights. Plaintiff argues that the Amended Complaint states a claim against White for supervisory liability under § 1983 under the theory that White knew of and acquiesced in his subordinates' violations of the City's policy to keep cell doors locked at all times.

The Amended Complaint alleges that White was employed as sergeant of the Delta building at CFCF, and was responsible for supervising the officers who violated Plaintiff's constitutional rights. (Am. Compl. ¶ 22.) The Amended Complaint also alleges that White was "aware that officer[s] routinely do not follow [the] locked door policy," and that White did not "conduct tours of his officer[s'] housing area[s], to ensure [that the] policy was at all times being

followed, carried out, and not ignored." (Id. ¶ 23.) According to the Amended Complaint, "White's failure as a supervisor [led] to the violation of . . . plaintiff's rights," because White "ignored and failed to react to a widespread health and safety problem," and "failed to protect plaintiff, [and] was deliberately indifferent to his safety, all of which led to plaintiff's injuries." (Id. ¶ 24.) These allegations are sufficient to state a claim that White knew of, and acquiesced to, his subordinates' violations of inmates' constitutional rights. See Robinson, 120 F.3d at 1294 (recognizing that a court may infer acquiescence where a supervisor knows of his subordinate's unconstitutional actions but fails to act to stop it). Therefore, we conclude the Amended Complaint states a plausible claim against White under § 1983, and accordingly, we deny White's Motion as to Plaintiff's claims against White.

### 2. Lieutenant Elizabeth Henry

Henry argues that the Amended Complaint merely alleges that she is vicariously liable for her subordinates' violations of Plaintiff's constitutional rights. The Amended Complaint alleges that Henry was employed as a "Lieutenant C/O III" at CFCF, and was White's supervisor. (Am. Compl. ¶ 29.) The Amended Complaint alleges that Henry "was aware that multiple policies which protected plaintiff were regularly ignored." (Id. ¶ 30.) Additionally, the Amended Complaint alleges that Henry participated in threatening Plaintiff that he would not be sent to the hospital if he did not identify his attackers. (Id. ¶¶ 27, 31.)

With regard to whether Henry knew and acquiesced to her subordinates' violations of "locked cell door" policy, the Amended Complaint alleges that Henry "was aware" that her subordinates were not adhering to the policy and was "deliberate[ly] indifferent" to Plaintiff's safety. (Id. ¶¶ 30, 32.) It is reasonable to infer from these allegations that Henry knew that her

subordinates were "violating someone's rights but fail[ed] to act to stop the subordinate from doing so." Robinson, 120 F.3d at 1294. These allegations are therefore sufficient to state a claim against Henry for supervisory liability under § 1983 because they support a reasonable inference that Henry "had knowledge of and acquiesced in [her] subordinates' violations." A.M., 372 F.3d at 586.

With regard to whether Henry directly participated in violating Plaintiff's constitutional rights, the Amended Complaint alleges that Henry "concurred in the threats" that Plaintiff would not be sent to the hospital unless he could identify his attackers. (Am. Comp. ¶¶ 27, 31.) However, the Amended Complaint does not adequately allege that Henry's threats caused the medical department to refuse to send Plaintiff to the hospital, or in any way caused his medical care to be delayed. See Burnsworth v. PC Lab., 364 F. App'x 772, 775 (3d Cir. 2010) (noting that in a § 1983 case, a plaintiff "must demonstrate a plausible nexus or affirmative link between the [defendant's actions] and the specific deprivation of constitutional rights at issue" (alteration in original) (quotation and citation omitted)). Thus, the Amended Complaint fails to state a claim upon which relief may be granted based on Henry's threats that Plaintiff would not be taken to the hospital. A.M., 372 F.3d at 586.

For all of these reasons, we conclude that the Amended Complaint alleges sufficient facts to state a plausible claim against Henry insofar as it alleges that Henry knew and acquiesced to her subordinates' violations of Plaintiff's constitutional rights, and accordingly, we deny Henry's Motion to Dismiss as to Plaintiff's claims against Henry.

## IV. CONCLUSION

For the reasons stated above, we grant PHS's and Daniels's Motion to Dismiss. We also grant the Motion filed by the City, White, and Henry insofar as it seeks dismissal of the claims against the City, and deny the Motion insofar as it seeks dismissal of the claims against White and Henry. We also, however, grant Plaintiff leave to amend his Amended Complaint.[6] An appropriate order follows.

BY THE COURT:

/s/ John R. Padova

John R. Padova, J.

---

[6] "[I]n civil rights cases, district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007). Futility "means that the complaint, as amended, would fail to state a claim upon which relief could be granted." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted). In assessing futility, we apply the same standard of legal sufficiency as applies under Rule 12(b)(6). Id. (citation omitted). At this point, the Amended Complaint sufficiently alleges claims against White and Henry, and those claims will go forward as stated in the Amended Complaint. However, the Amended Complaint fails to allege sufficient claims against PHS, Daniels, and the City, but it is not clear that further amendment as to Plaintiff's claims against these three defendants would be futile. Therefore, we grant Plaintiff leave to amend his Amended Complaint to assert cognizable claims against PHS, Daniels, and the City.