IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHON M. BENNETT | : | CIVIL ACTION |
| v. | : | |
| C/O WASHINGTON, et al. | : | NO. 11-176 |

**MEMORANDUM**

**Padova, J.**                                                                               July 15, 2013

Pro se Plaintiff Stephon M. Bennett brings this action alleging violations of his civil rights arising out of a prison assault and subsequent medical care, pursuant to 42 U.S.C. § 1983, against the City of Philadelphia (the "City"); Corrections Officers Clifton Washington, Elizabeth Henry, Sharon Neal, Malachi White, Michael Sporango, and Lieutenant Lynn; Healthcare Administrator Kim Daniels; and Prison Health Services, Inc. ("PHS"). Presently before the Court are: (1) a Motion to Dismiss the Second Amended Complaint filed by Defendants PHS and Daniels; and (2) Plaintiff's Motion for Leave to File a Third Amended Complaint. For the following reasons, we grant the Motion to Dismiss in part and deny it in part, and deny the Motion for Leave to File a Third Amended Complaint.

## I. BACKGROUND

The Second Amended Complaint ("SAC") alleges the following facts. Due to a history of violent assaults and stabbings occurring inside unlocked prison cells at Curran Fromhold Corrections Facility ("CFCF"), the City maintained policies that required cell doors to be locked at all times, and required officers to conduct tours of the housing areas. (SAC ¶¶ 16, 18.) On November 19, 2009, Plaintiff, a CFCF prisoner, was left in an unlocked cell with no officer at or near his door. (Id. ¶¶ 14, 17.) At 4:30 p.m., at least five other inmates entered Plaintiff's unlocked cell and viciously attacked him. (Id. ¶ 14.) Plaintiff suffered six stab wounds, as well

as multiple abrasions to his head and face. (Id. ¶ 15.) After the attack, Plaintiff was left unattended inside his cell for close to two hours. (Id. ¶¶ 15, 18.)

At approximately 7:30 p.m., Plaintiff was escorted to CFCF's medical department where a PHS physician tended to his wounds, but ignored Plaintiff's complaints that he was in excruciating pain and was experiencing shortness of breath. (Id. ¶¶ 37-38.) PHS physicians were supervised and trained by Kim Daniels, who was employed by PHS as the Health Care Administrator at CFCF. (Id. ¶¶ 11, 48.) At some point after Plaintiff was taken to the medical department, CFCF corrections officers questioned Plaintiff about the stabbing, but he was unable to identify his attackers. (Id. ¶¶ 25-26, 36.) Two corrections officers told Plaintiff that if he could not provide helpful information about his attackers' identities, they would keep him in the infirmary and protective custody rather than send him to the hospital. (Id. ¶¶ 26-27, 33-34.)

At approximately 10:00 p.m., Plaintiff was transferred to the infirmary where he was seen by additional PHS physicians, to whom he again complained of excruciating pain and shortness of breath. (Id. ¶ 39.) Plaintiff saw a doctor at 9:30 a.m. the following morning, and he again complained of difficulty breathing, dizziness, and pain. (Id. ¶ 40.) He was sent for x-rays that showed his lung had partially collapsed. (Id.) He was then transported from the infirmary to a hospital, at which time twenty-five hours had elapsed since his injuries were sustained. (Id.)

The SAC asserts claims for "failure to protect," "cruel and unusual punishment," and "due process violations" under the Eighth and Fourteenth Amendments against all Defendants, but does not indicate which of these alleged constitutional violations is asserted against each Defendant. (See id. ¶ 52.) PHS and Daniels have moved to dismiss Plaintiff's claims against them for failure to state a claim upon which relief may be granted pursuant to Federal Rule of

2

Civil Procedure 12(b)(6). Plaintiff has also moved for leave to file a Third Amended Complaint to assert state law claims against PHS, Daniels, and a new defendant, Dr. Boggio, which we deny because we decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

## II.    LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)). We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011)). Legal conclusions, however, receive no deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). In the end, we will dismiss a complaint if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

## III. DISCUSSION

Plaintiff brings his federal claims pursuant to 42 U.S.C. § 1983, which provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. In order to state a claim for relief pursuant to § 1983, "a plaintiff must demonstrate the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citations omitted).

### A. PHS

The SAC alleges that PHS violated Plaintiff's constitutional rights by: (1) employing a policy of providing untrained medical physicians; and (2) employing a custom of allowing corrections officers to deter medical treatment for injured inmates. (SAC ¶ 41.) It is well settled that a municipality may only be liable under § 1983 when the alleged constitutional transgressor

4

implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91, 694 (1978). "The same standard applies to a private corporation . . . that is acting under color of state law." Thomas v. Zinkel, 155 F. Supp. 2d 408, 412 (E.D. Pa. 2001); see also Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-85 (3d Cir. 2003) (recognizing that "[i]n order for PHS to be liable, [a plaintiff] must provide evidence that there was a relevant PHS policy or custom").[1]

Once a policy or custom is identified, a plaintiff must establish that the private entity maintained the policy or custom with "deliberate indifference" to the constitutional deprivations that the policy or custom caused. City of Canton v. Harris, 489 U.S. 378, 389 (1989). Deliberate indifference may be established by evidence that policymakers were aware of the constitutional deprivations and of the alternatives for preventing them, "but either deliberately choose not to pursue these alternatives or acquiesced in a long-standing policy or custom of inaction in this regard." Simmons, 947 F.2d at 1064 (footnote omitted); see also Bd. of County Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 407 (1997) ("If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action - the 'deliberate indifference' - necessary to trigger municipal liability." (citing City of Canton, 489 U.S. at 390 n.10)). In addition, a plaintiff must also prove

---

[1] A policy is defined as a "'statement, ordinance, regulation, or decision officially adopted and promulgated by [a] body's officers.'" Simmons v. City of Philadelphia, 947 F.2d 1042, 1059 (3d Cir. 1991) (quoting Monell, 436 U.S. at 690). A custom consists of "'such practices of state officials . . . [as are] so permanent and well settled as to constitute a custom or usage with the force of law.'" Id. (alteration in original) (quoting Monell, 436 U.S. at 691).

that the policy or custom was "the proximate cause of the injuries suffered." Beck v. City of Pittsburgh, 89 F.3d 966, 972 n.6 (3d Cir. 1996) (citation omitted).

PHS argues that the SAC fails to state a plausible claim that any of PHS's alleged policies caused Plaintiff's injuries, or were maintained with deliberate indifference to Plaintiff's constitutional rights. The SAC alleges that PHS had "a policy of providing untrained medical physicians" at CFCF. (SAC ¶ 41.) With respect to the medical treatment that Plaintiff received on November 19, 2009, the SAC alleges that Plaintiff was seen by a physician when he arrived at the CFCF medical department, and that his "complaints were ignored." (Id. ¶ 38.) The SAC also alleges that he was seen by additional PHS physicians at 10:00 p.m. that night, and at 9:30 a.m. the next morning, at which time he was sent for an x-ray. (Id. ¶¶ 39-40.) However, despite Plaintiff's allegation that PHS employed a policy of providing <u>untrained</u> physicians at CFCF, the SAC does not allege that the PHS physicians who treated Plaintiff on November 19, 2009 were <u>untrained</u>, and Plaintiff fails to identify any particular respect in which their alleged lack of training caused his deficient treatment.[2] Therefore, the facts alleged in the SAC relating to Plaintiff's medical treatment on November 19, 2009, do not support Plaintiff's claim that his injuries were caused by PHS's policy of providing untrained physicians, and we grant the Motion to Dismiss as to that claim.

The SAC also alleges that "PHS employed a custom of allowing corrections officers to deter adequate medical treatment for injured inmates" which "was the proximate cause of Plaintiff's 25 hr. delay in being sent to the hospital." (Id. ¶¶ 41-42.) With respect to that alleged

---

[2]To the extent that Plaintiff's claim against PHS rests upon an allegation that PHS physicians failed to comply with the standard of care, that claim amounts only to an allegation of malpractice, and "[a]llegations of medical malpractice are not sufficient to establish a Constitutional violation." Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

custom, the SAC alleges that on November 19, 2009, two corrections officers repeatedly asked Plaintiff who stabbed him, but Plaintiff was unable to identify his attackers. (Id. ¶ 26.) The SAC further alleges that "threats were issued" by the corrections officers, and he was told that he "would not be sent to the hospital if he did not provide helpful information" about the assault. (Id. ¶ 27.) According to Plaintiff, those threats were intended to, and did, delay his medical care for non-medical reasons, and those corrections officers "should not have had any say on whether plaintiff would go to the hospital or not." (Id. ¶ 34, 44.) The SAC also alleges that nearly three hours after being initially seen at the CFCF medical department, Plaintiff was sent to the infirmary rather than the hospital "as [the corrections officers] promised." (Id. ¶¶ 37, 39.)

PHS argues that the SAC fails to adequately allege facts to support Plaintiff's claim that PHS was deliberately indifferent to prior constitutional violations caused by this alleged custom. However, the SAC specifically alleges that "PHS's failure to prohibit corrections officers from interrogating or making medical treatment decisions[] for injured inmates . . . has caused other inmates to receive inadequate medical treatment in the past." (Id. ¶ 41.) The SAC also alleges that "PHS was aware that their employee[s] have been the proximate cause of other Constitutional violations in the past" (id. ¶ 42), and that "[d]espite being put 'on notice' that new policies were appropriate in order to guarantee inmates adequate medical care, PHS deliberately chose not to pursue these alternatives and or acqui[e]sced in a long standing policy or custom of inaction." (Id. ¶ 43.) Liberally construing these allegations as we must for pro se Plaintiff, it is reasonable to infer from these facts that the SAC alleges that PHS "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety" or ignored other alternatives that could have prevented corrections officers from deterring medical care for injured inmates. Natale, 318 F.3d

at 582 (quoting Farmer, 511 U.S. at 837); see Simmons, 947 F.2d at 1064 (noting that a Monell defendant must "deliberately choose not to pursue these alternatives or acquiesced in a long-standing policy or custom of inaction" (footnote omitted).). We therefore conclude that the SAC alleges sufficient facts to state a plausible claim against PHS under § 1983 for employing a custom of allowing corrections officers to deter medical treatment for injured inmates, and accordingly, we deny the Motion to Dismiss as to that claim.

B. Healthcare Administrator Kim Daniels

The SAC alleges that Healthcare Administrator Kim Daniels violated Plaintiff's constitutional rights under § 1983 by failing to supervise and train PHS physicians to provide adequate medical care. (SAC ¶ 48.) "Under Section 1983, a supervisor may be liable for her failure to train or supervise her employees . . . ." Whitfield v. City of Phila., 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008). To state a claim under § 1983 for failure to train, a complaint must allege that the supervisor's failure to train her employees amounts to "'deliberate indifference to the rights of persons with whom the [untrained employees] c[a]me into contact.'" Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (first alteration in original) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)).

The United States Supreme Court has explained that in a failure to train claim, deliberate indifference requires proof that the supervisor "disregarded a known or obvious consequence" of her action. Id. at 1360 (quotation omitted). When a supervisor is "on actual or constructive notice that a particular omission in [her] training program" causes her subordinates to "violate citizens' constitutional rights," the supervisor may be deliberately indifferent if she chooses to retain her training program. Id. (citing Bryan Cnty., 520 U.S. at 407). In other words, "[a]

pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. (quoting Bryan Cnty., 520 U.S. at 409); see Washington v. City of Phila., Civ. A. No. 11-3275, 2012 WL 85480, at *6 (E.D. Pa. Jan. 11, 2012). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." Connick, 131 S. Ct. at 1360.

However, "'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference." Id. at 1361 (quoting Bryan Cnty., 520 U.S. at 409); Washington, 2012 WL 85480, at *8 ("To establish deliberate indifference from a single incident, a plaintiff must show that the municipality's failure to train was obviously going to lead to the constitutional violations alleged.") Such a circumstance occurs where a defendant is "on notice that, absent additional specified training, it was 'highly predictable'" that failing to train would amount to "conscious disregard" of the plaintiff's rights. Connick, 131 S. Ct. at 1365. In addition to proving deliberate indifference, a plaintiff must also demonstrate that the inadequate training caused the alleged constitutional violation. See Grazier v. City of Phila., 328 F.3d 120, 124-25 (3d Cir. 2003).

Daniels argues that the SAC fails to state a claim against her for failure to train because Plaintiff does not allege that she was deliberately indifferent to a need to train the PHS physicians. The SAC alleges that on November 19, 2009, Plaintiff complained to PHS physicians about his injuries, but his complaints were ignored. (SAC ¶¶ 38-39.) The SAC also alleges that Daniels is "personally responsible for the 25 hours it took for PHS employees to realize that plaintiff needed to be sent to the hospital" (id. ¶ 47), and that there was "a pattern of

9

similar constitutional violations at C.F.C.F. involving inadequately trained PHS medical physicians making incorrect medical prognos[e]s to injured inmates in the past." (Id. ¶ 45.) The SAC further alleges that "Daniels was put on notice that there were deficiencies in her training program" and that she "deliberately chose not to act." (Id. ¶ 46.)

These allegations in the SAC, as they relate to the deficiencies in Daniels's training program and her knowledge of those alleged deficiencies, are merely legal conclusions bereft of factual support. For example, the SAC does not allege that the PHS physicians that treated Plaintiff were trained by Daniels. It also fails to describe the nature of her training program, any particular deficiencies in the training program, that those deficiencies caused Plaintiff's injuries, or any facts that support the allegation that she was aware or should have been aware of those alleged deficiencies. We agree that the SAC fails to state a plausible claim against Daniels under § 1983 because it only sets forth a formulaic recitation of the elements necessary to state a claim for failure to train under § 1983. See Connick, 131 S. Ct. at 1360 (stating that a claim for failure to train ordinarily requires "[a] pattern of similar constitutional violations by untrained employees"); id. (noting that a claim for failure to train requires that a supervisor is on "notice that a particular omission in [her] training program" causes her subordinates to violate an individual's constitutional rights).

To survive the Motion to Dismiss absent a sufficient allegation that Daniels was on notice that her training program was deficient in a particular respect, Plaintiff's claim must fall into the "'narrow range of circumstances'" that would justify deliberate indifference based on a single incident. Id. at 1361 (quoting Bryan Cnty., 520 U.S. at 409). The SAC alleges that CFCF maintained a medical department and staffed it full-time with medical personnel. (See SAC ¶¶

37-40.) Plaintiff does not allege the medical professionals that treated him were wholly untrained, and it is not reasonable to infer from the sparse facts in the SAC that the alleged deficiencies in the training program were "obviously" going to lead to a constitutional violation, Washington, 2012 WL 85480, at *8, or that it was "highly predictable" that failing to train would amount to "conscious disregard" for Plaintiff's rights, Connick, 131 S. Ct. at 1365. We therefore conclude that the SAC fails to allege a plausible claim against Daniels for failure to train under § 1983, and we grant the Motion to Dismiss as to Plaintiff's claim against Daniels.[3]

### C. Motion for Leave to File a Third Amended Complaint

Plaintiff has filed a Motion for Leave to File a Third Amended Complaint ("TAC") to add a state law claim of negligence against Daniels, a state law claim of corporate negligence against PHS, and a state law malpractice claim against a new defendant, Dr. Boggio, who was a physician who examined Plaintiff at CFCF. (Mot. for Leave to File a TAC ¶¶ 2, 4; TAC ¶¶ 49, 56, 57.)[4] "[A] motion for leave to amend a complaint [is] addressed to the sound discretion of the district court," Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 272 (3d Cir. 2001), but "the Court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

---

[3] "[I]n civil rights cases, district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007). This action has been pending since January 18, 2011, and Plaintiff has already been given two opportunities to amend his pleading to conform with the requirements of the Federal Rules of Civil Procedure and § 1983. Plaintiff has repeatedly failed to do so with respect to the claims that we have here dismissed against PHS and Daniels and, thus, we will not grant him leave to amend his complaint again.

[4] Although some allegations in the TAC also seem to assert new or different federal claims against these defendants, Plaintiff has expressly limited the scope of his Motion to adding only these particular state law claims against PHS, Daniels, and Dr. Boggio. (See Mot. for Leave to File a TAC ¶ 4; Pl.'s Reply Br., Docket No. 90 at 3.)

Were we to permit Plaintiff to add the state law claims proposed in the TAC, we would do so pursuant to the doctrine of supplemental jurisdiction. See 28 U.S.C. § 1367(a). "[A] district court may exercise supplemental jurisdiction where state-law claims share a 'common nucleus of operative fact'" with the plaintiff's federal claims. De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 308 (3d Cir. 2003) (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)). In addition, a court may "decline to exercise jurisdiction over pendant state law claims . . . . [where] all federal claims against certain defendants have been dismissed leaving only a pendant state law claim against them, which lacks a common nucleus with the remaining federal claims against the other defendants." Singleton v. Pittsburgh Bd. of Educ., Civ. A. No. 11-1431, 2012 WL 4068381, at *13 (W.D. Pa. Aug. 24, 2012) (citing Kis v. Cnty. of Schuylkill, 866 F. Supp. 1462, 1480 (E.D. Pa. 1994)). Accordingly, a court may deny a plaintiff leave to amend his complaint to assert state law claims over which the court has declined to exercise supplemental jurisdiction. See Folk v. Pa. Dep't of Educ., Civ. A. No. 10-7377, 2012 WL 2282849, at *6 (E.D. Pa. June 14, 2012) (citing Fed. R. Civ. P. 15(a)(2)).

The proposed state law claims against Daniels and Dr. Boggio relate to PHS physicians' allegedly deficient course of treatment and malpractice in connection with failing to adequately treat Plaintiff at CFCF, and Plaintiff's proposed corporate negligence claim against PHS also rests upon PHS's vicarious liability for Dr. Boggio's alleged malpractice. (See Pl.'s Reply Br., Docket No. 90 at 9.) Because we have dismissed all of Plaintiff's federal claims that relate to the allegedly deficient course of treatment provided by PHS physicians at CFCF, Plaintiff's proposed state law claims lack a "common nucleus" of fact with the federal claims going forward against the remaining defendants. Singleton, 2012 WL 4068381, at *13. We therefore

12

decline to exercise supplemental jurisdiction over Plaintiff's proposed state law claims against PHS, Daniels, and Dr. Boggio, and accordingly, we deny Plaintiff's Motion for Leave to File a TAC.

## IV. CONCLUSION

For the foregoing reasons, we deny the Motion to Dismiss insofar as it seeks dismissal of claim against PHS resting on allegations that PHS maintained a custom of allowing corrections officers to deter medical care for injured inmates, and grant the Motion to Dismiss in all other respects. We also deny Plaintiff's Motion for Leave to File a Third Amended Complaint. An appropriate order follows.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.